Jon Weiner
Attorney at Law
10260 SW Greenburg Road  Suite 400
Portland, OR  97223
Tel: (503) 399-7001
jweiner@nw-attorneys.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

Case No.

MARIE DRENNAN, an individual,

        Plaintiff,

v.

THE OREGON CLINIC, P.C., an Oregon Professional Corporation,

        Defendant.

**COMPLAINT**

**Claims for gender-based discrimination and retaliation under Federal (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17) and State ((ORS 659A.030(1)(a), (b), and (f)) law: OSHA retaliation in violation of ORS 654.062; and whistleblower retaliation in violation of ORS 659A.199.**

**(Demand for Jury Trial)**

## PRELIMINARY STATEMENT

1.

The allegations set forth herein are intended to apply to "all times relevant" without regard to whether they are stated in the past, present, or future tense. Plaintiff brings this action

Page **1** of **15** – COMPLAINT

**JON H. WEINER,** Attorney at Law
10260 SW Greenburg Road #400
Portland, OR  97223

against her former employer The Oregon Clinic, P.C. (hereinafter "Oregon Clinic"), asserting claims for gender-based discrimination and retaliation under Federal (Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17) and State ((ORS 659A.030(1)(a), (b), and (f)) law: OSHA retaliation in violation of ORS 654.062; and whistleblower retaliation in violation of ORS 659A.199.

## JURISDICTION

2.

This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims, which are authorized under ORS 659A.885(1), (2), and (3), are so closely related to her federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.

Venue is appropriate in this Court pursuant to 28 USC § 1391 because a substantial majority of the events giving rise to this complaint occurred in Clackamas County, Oregon.

## FACTUAL ALLEGATIONS

4.

Oregon Clinic is an Oregon Professional Corporation that operates 50 health care facilities located in the greater Portland, Oregon, metropolitan area. Upon information and belief,

Oregon Clinic has continuously employed more than one thousand people during the calendar years 2021, 2022, 2023, 2024, and 2025.

5.

Plaintiff dual-filed gender discrimination and related retaliation charges with the Oregon Bureau of Labor and Industries (BOLI) and Equal Employment Opportunity Commission (EEOC) on August 12, 2024. Plaintiff received a 90-day right-to-sue letter from BOLI dated and post-marked February 25, 2025. Plaintiff has not received such a letter from the EEOC, but has initiated this action within 30 days of her receipt of the BOLI right-to-sue letter on March 2, 2025. Plaintiff has exhausted her State and Federal administrative remedies. Her state and federal gender discrimination and related retaliation claims are timely asserted. Plaintiff's state law OSHA and whistleblower claims are timely asserted because this Complaint was filed less than 1 year after her discharge.

6.

In September, 2022, Plaintiff was hired by Oregon Clinic to work as a patient service specialist. As relevant here, she worked at Oregon Clinic's Gastroenterology-South facility in Oregon City, Oregon.

7.

On March 14, 2024, Plaintiff submitted a written complaint to her workplace office manager Paula Vanderhoof ("Vanderhoof"), explaining that she was in fear for her safety due to gender-based unwanted sexually harassing and related stalking behavior directed at her by an employee ("Kevin") of the company Oregon Clinic used to provide laundry services ("ImageFIRST"). The contents of that complaint were as follows:

> The guy who provides laundry service is totally crossing a boundary.

> He recently has been here daily and on 3/11 he came Into the office and sought me out. He began to ask Alisha if I was here then quickly realized I was in checkout and came into my space grabbed my bun on top of my head and moved my head around then sat down and began telling me why he has not been on this route. He stayed in my space for about 5 minutes.
>
> He was here the next 3 days after and each time he walks by the window in Checkout A and stares in at me and/or is looking for me if I am not my desk. Alicia is a witness to him walking by my window very close to the building while continually staring in at me. On 3/12 I went out to break and he was standing at the back of his work truck staring at me walking through the parking garage.
>
> I am super uncomfortable with my encounters with him and that he is seeking me out while I am at work. I am beginning to fear for my safety at work as his behaviors have begun to escalate each time he is here.
>
> I did ask Jennifer in infusions what his name is and she said that she believes it is Kevin.
>
> Please help me navigate this situation so I can feel secure and safe while at work.
>
> Thanks,
> Marie

Email to Office Manager Vanderhoof, sent 3/14/24.

8.

On March 18, 2024 Plaintiff submitted another written complaint, this time to Portland Clinic's Human Resources staff member Joe Schmidt. That email included a copy of the email sent on March 14, 2024 to Paula Vanderhoof and stated in relevant part:

> On March 14th I made Paula aware of a outsourced employee making me fear my safety. I also made Paul Krull aware while this employee was here. I will paste the contents of this email that was sent to Paula below. I am discouraged that my safety is a priority as Paula simply told me to 'tell him to leave, and that he is to use the back door.' Several employees have witnessed this laundry working seeking me out at work. Please see the email below.

Email to HR staff member Joe Smith, sent March 18, 2024.

9.

The laundry employee's unwanted harassing conduct and stalking behavior began a few months after Plaintiff was hired and then escalated. The harassment and resulting hostile work environment in which she was forced to work was not limited to the conduct described in her two written complaints. On one occasion, Kevin brought Plaintiff an unwanted gift and presented it to her in front of her co-workers (she was taken aback and simply set it down). Kevin generally popped into Plaintiff's workspace several days a week when there was no business-related reason to do so. He came by uninvited on his days off. Some weeks, Kevin stopped to visit Plaintiff several days in a row – even when it was apparently unnecessary for him to be at the facility at all. According to Plaintiff's co-workers, Kevin would often ask around and try to ascertain Plaintiff's whereabouts. Oregon Clinic was aware of the situation created by Kevin but did nothing to address it.

10.

Kevin's conduct adversely impacted Plaintiff's work environment in several significant ways. After Plaintiff caught Kevin behind his work truck, staring at her while she was walking in the parking garage, she changed her route to avoid that area. Plaintiff was constantly on edge because she was worried Kevin could arrive at any time and commence with his harassment. Co-workers would keep an eye out for him and alert her when they saw him coming. When they did so – or when she saw him first – she would dart away and hide to avoid him. On March 26, 2024, Kevin peeped through her window so many times she had to close her blinds. On March 27, 2024, Kevin showed up and Plaintiff went into a panic, leaving work at 9:45 am. Even prior to her written complaints, Plaintiff's superiors were aware of the situation but did nothing. Plaintiff feared for her safety and experienced much anxiety because Kevin was stalking/harassing her - and her employer was doing nothing to protect her.

11.

In its position statement to BOLI, Oregon Clinic stated that it had called Kevin's employer ImageFIRST and described the call as follows:

> Infusion Nursing Supervisor Heather Rawlins called and spoke to the ImageFIRST employee directly and reiterated TOC's expectation that ImageFIRST employees follow agreed-upon service protocols, including refraining from interacting with front office employees like Ms. Drennan. The employee agreed to comply with these protocols. After additional discussions between TOC and ImageFIRST, ImageFIRST agreed that the employee in question would no longer provide services at TOC's Gastroenterology South – Oregon City location.

Def. BOLI Position Stmt, p2.

12.

Oregon Clinic operates 50 medical offices in the Portland area and serves over 500,000 patients a year. It has (upon information and belief) over 1000 employees, an administrative office, and a human resources department. There are multiple administrative layers to Oregon Clinic. However, in spite of its size and administrative structure, Oregon Clinic chose to respond not through its human resources department, executive team, or similar appropriate channel. Instead, Oregon Clinic decided it would look to " Infusion Nursing Supervisor" Heather Rawlins in its Oregon City Infusion Department to deal with the problem.

13.

Plaintiff paid the price for Oregon Clinic's lackadaisical approach to the unwanted sexually harassing conduct and related dangerous stalking behavior exhibited by Kevin. The Infusion Nursing Supervisor (a low-level supervisory employee) significantly exacerbated the threat to Plaintiff by contacting Kevin directly and tipping him off that Plaintiff had complained about him. Predictably, Oregon Clinic's alleged remedial action was proven ineffective as Kevin continued to appear at Plaintiff's workplace (as described above, on March 26, 2024 he walked

by Plaintiff's window and stared so many times she had to close her blinds (he returned the following day)). Even taking Oregon's Clinic at its word, Oregon Clinic's approach to dealing with this significant threat to Plaintiff's safety demonstrates it did not address her concerns appropriately or adopt an approach commensurate with the gravity of the situation.

14.

When Kevin continued to appear even after Oregon Clinic's alleged remedial action, Plaintiff contacted his employer herself. The company soon thereafter texted Plaintiff that it had taken care of the issue and she would have no further problems with Kevin.

15.

On or about March 20, 2024, employees at the Oregon City office (including Plaintiff) received an urgent email warning of a potential shooter who had threatened Oregon Clinic (to Plaintiff's knowledge, the threat was not made against any particular facility). Although the email said the Oregon City office should "lock down" and shelter in place, the facility's management chose to ignore the warning and keep the facility open – with people simply coming and going as they pleased.

16.

Based on her reasonable good faith belief that Oregon Clinic's failure to adequately respond to the potential shooter threat violated OSHA and/or OR-OSHA, Plaintiff initiated a complaint with BOLI[1]. That complaint was filed about 4-5 days after the potential shooter threat. A few days later a supervisor warned Plaintiff to "watch your back" because Oregon Clinic was aware of her OSHA complaint.

---

[1] It seems that Plaintiff filled out an online initial intake form. Although she received written confirmation of BOLI's receipt of the form and a statement that BOLI would draft a complaint and send her a copy, BOLI apparently did not follow through.

Page **7** of **15** – COMPLAINT

17.

On March 28, 2024 Plaintiff was pulled into a meeting, placed on suspension for pretextual reasons, and told "this relationship is broken." Plaintiff was directed to write something about how she intended to fix things and then sent home. A Human Resources staff member, Plaintiff's Supervisor, and the facility's Office Manager Paula Vanderhoof were present. Near the beginning of the meeting the Human Resources staff member mentioned that Plaintiff had filed an OSHA Complaint, to which Vanderhoof replied "yeah she did." Plaintiff admitted that she had filed the complaint and provided the factual basis upon which it rested (Oregon Clinic's failure to adequately address the shooter threat).

18.

On April 1, 2024 Plaintiff sent an email to Oregon Clinic, indicating her willingness to continue employment and asserting she was being subjected to retaliation. She was discharged later that day, which was about 10-14 days after she submitted her OSHA complaint and less than three weeks after her first written complaint about Kevin.

19.

As described above, Plaintiff submitted two written complaints to Oregon Clinic, based on a reasonable good faith believe that she was being subjected to unlawful sexual harassment sufficiently severe or pervasive to adversely affect the terms and conditions of her employment. She also filed a complaint with BOLI, based on a reasonable good faith belief that Oregon Clinic's failure to appropriately respond to the March 20, 2024 shooter threat was unlawful[2] .

---

[2] ORS 654.010 provides in relevant part, "Every employer shall…adopt and use such practices…as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of [its] employees."

Page **8** of **15** – COMPLAINT

Plaintiff was discharged in retaliation for one or more of her protected activities. If she had not engaged in her protected activities she would not have been discharged.

## FIRST CLAIM – VIOLATION OF TITLE VII
### Count 1 (Sexual Harassment)
### (42 U.S.C. § 2000e–2(a)(1))

20.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 19.

21.

At all material times, Oregon Clinic was an employer within the meaning of 42 USC § 2000e (b).

22.

Title VII provides in relevant part, "It shall be an unlawful employment practice for an employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e–2(a)(1).

23.

Oregon Clinic was a customer of Kevin's employer. As such, Oregon Clinic had the leverage and ability to immediately prohibit Kevin from entering its Oregon City office and to permanently trespass him from the premises. Alternatively, Oregon Clinic could have filed for a protective stalking order or submitted a complaint to law enforcement. Oregon Clinic knew, or should have known, about Kevin's unwanted sexually harassing behavior and stalking conduct but failed to take prompt and appropriate remedial action.

24,

Plaintiff perceived her work environment to be hostile and a reasonable person in her position would also have perceived it as hostile. The unwanted gender-based sexually harassing conduct and stalking behavior perpetrated by Kevin - and unremedied by Oregon Clinic - was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile work environment. Oregon Clinic's failure to take prompt appropriate remedial action adversely affected the terms and conditions of Plaintiff's employment, based on gender.

25.

As a result of Oregon Clinic's unlawful employment actions, Plaintiff has suffered economic and non-economic damages. She is entitled to an award for those damages, plus pre-judgment interest and post-judgment interest, all in amounts to be proved at trial. Plaintiff is also entitled to such other equitable relief as justice may require. Pursuant to 42 USC § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

**(Count 2 – Retaliation)**

**(§ 2000e–3(a))**

26.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 25.

27.

At all material times, Oregon Clinic was an employer within the meaning of 42 USC § 2000e (b).

28.

42 USC § 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

subchapter.
42 USC § 2000e–3(a).

29.

During the course of her employment with Oregon Clinic, Plaintiff reported and opposed conduct she reasonably and in good faith believed to be unlawful sexual harassment. In retaliation for plaintiff's Title VII-protected conduct, Oregon Clinic terminated her employment in violation of 42 U.S.C. § 2000e-3(a). Oregon Clinic discriminated and retaliated against Plaintiff with respect to the terms and conditions of her employment because she opposed unlawful gender discrimination.

30.

As a result of Oregon Clinic's unlawful employment actions, Plaintiff has suffered economic and non-economic damages in amounts to be proved at trial.

31.

Plaintiff is entitled to equitable relief, including, but not limited to, an award of back pay and lost benefits. Plaintiff is entitled to an award for her economic and non-economic damages, prejudgment interest, post-judgment interest, and such other equitable relief as justice may require. Pursuant to 42 USC § 2000e-5, Plaintiff is entitled to an award of attorneys' fees, expert witness fees, and costs incurred herein.

## SECOND CLAIM – STATE LAW GENDER DISCRIMINATION AND RETALIATION

### (ORS 659A.030(1)(b) and (f))

32.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 31.

33.

ORS 659A.030(1), "It is an unlawful employment practice:

Page **11** of **15** – COMPLAINT

**JON H. WEINER,** Attorney at Law
10260 SW Greenburg Road #400
Portland, OR  97223

    (a) For an employer, because of an individual's race, color, religion, sex, sexual orientation…or because of the race, color, religion, sex, sexual orientation [or]…of any other person with whom the individual associates, to refuse to hire or employ the individual or to bar or discharge the individual from employment.

    (b) For an employer, because of an individual's race, color, religion, sex, [or] sexual orientation…or because of the race, color, religion, sex, [or] sexual orientation…of any other person with whom the individual associates,…to discriminate against the individual in compensation or in terms, conditions or privileges of employment.

    *
    *
    *

    (f) For any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

ORS 659A.030(1).

34.

Oregon Clinic is an "employer" within the meaning of ORS 659A.001(4) and ORS 659A.030.

35.

Oregon Clinic was aware of but failed to take prompt remedial action to remedy the discrimination, harassment, and hostile work environment Plaintiff was forced to endure.

36.

Oregon Clinic violated ORS 659A.030(1)(b) when it subjected Plaintiff to a hostile work environment, adversely affecting the terms and conditions of her employment based on gender.

37.

Additionally, Oregon clinic violated ORS 659A.030(f) when it discharged Plaintiff in retaliation for opposing gender discrimination, when her opposition was founded on her reasonable good faith belief that Kevin's and Oregon Clinic's conduct was unlawful.

Page **12** of **15** – COMPLAINT

38.

Plaintiff is entitled to equitable relief and economic damages, including back pay, benefits, front pay, compensatory damages, pre-judgment interest, and post-judgment interest, all in amounts to be determined at the time of trial. Pursuant to ORS 659A.885, Plaintiff is entitled to her reasonable attorney fees and costs.

### THIRD CLAIM – STATE LAW OSHA RETALIATION

### (ORS 654.062(5))

39.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38.

40.

ORS 654.052(c) provides:

It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employee or prospective employee because the employee or prospective employee has:

    (a) Opposed any practice forbidden by ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780; [or]

    (b) Made any complaint or instituted or caused to be instituted any proceeding under or related to ORS 654.001 to 654.295, 654.412 to 654.423 and 654.750 to 654.780, or has testified or is about to testify in any such proceeding;
*
*
*
ORS 654.052.

41.

Plaintiff exercised her right to a safe and healthy workplace when she opposed unsafe work practices (relating to Oregon Clinic's inadequate response to the above-described shooter threat) and/or made a complaint relating to safety in the workplace (also relating to Oregon

Page **13** of **15** – COMPLAINT

Clinic's inadequate response to the shooter threat), based on her reasonable belief that a violation of law, regulation or standard pertaining to safety and health in the workplace had occurred.

42.

Oregon Clinic violated ORS 654.052(5) when it discharged Plaintiff in retaliation for exercising her rights under ORS 654.052(5).

43.

As a result of Oregon Clinic's violation of ORS 654.062(5), Plaintiff suffered fear, anxiety, loss of enjoyment of life, and stress; as well as economic and other non-economic damages. Plaintiff is entitled to relief based on that harm. Plaintiff is also entitled to attorney fees and costs pursuant to ORS 654.062(6)(d).

## **FOURTH CLAIM – STATE LAW WHISTLEBLOWER RETALIATION**

### (ORS 659A.199 – Whistleblower Retaliation)

44.

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43.

45.

ORS 659A.199(1) provides, "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

46.

Oregon Clinic violated ORS 659A.199 when it subjected Plaintiff to adverse employment actions based on her good faith reports of – and opposition to - information she subjectively and reasonably believed to be evidence of a violation of a state or federal law, rule, or regulation.

47.

Pursuant to ORS 659A.885(1), (2) and (3), Plaintiff is entitled to backpay and any other equitable relief that may be appropriate; compensatory damages; punitive damages; and reasonable attorney fees and costs.

WHEREFORE, Plaintiff Marie Drennan requests the following remedies on her claims for relief against Defendant Oregon Clinic, P.C., set forth more specifically above:

A. A sum which will fully compensate Plaintiff for her non-economic damages in a sum that is just as determined by a jury;

B. A sum which will fully compensate Plaintiff for her economic damages in a sum that is just as determined by a jury;

C. Equitable Relief;

D. Plaintiff's costs and disbursements incurred herein;

E. Pre-and-post-judgment interest;

F. Plaintiff's attorney fees; and

G. Such other and further relief as the Court may deem just and equitable.

DATED this _____ Day of March, 2025,

                                                           */s/ Jon Weiner*
                                                          Jon Weiner, OSB # 993944
                                                          10260 SW Greenburg Road #400
                                                          Portland, OR 97223
                                                          Tel: (503) 399-7001
                                                          jweiner@nw-attorneys.com
                                                          Attorney for Plaintiff